UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

In re:                                                    :

                                                          :        Misc. No. ___1:21-mc-47___

RULE 45 SUBPOENAS ISSUED to the                           :
ELLIOTT MANAGEMENT                                        :        (Pending in the United States District
CORPORATION, PAUL SINGER and                             :        Court for the Central District of California,
TERRY KESSEL,                                             :        Western Division, Case No.
                                                          :        2:20-cv-02299-CAS-SK)
Regarding the United States District Court for            :
the Central District of California, Western               :
Division case                                             :

                                                          :


JBF INTERLUDE 2009 LTD. -- ISRAEL,

                Plaintiffs,

        v.

QUIBI HOLDINGS, LLC, et al.,

                Defendants.

---------------------------------------------------------

**NON-PARTIES ELLIOTT MANAGEMENT CORPORATION, PAUL SINGER, AND TERRY KASSEL'S OPENING BRIEF IN SUPPORT OF THEIR: (1) MOTION TO QUASH THE SUBPOENAS FROM QUIBI HOLDINGS, LLC; AND (2) <u>UNOPPOSED MOTION TO TRANSFER</u> THE MATTER TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................ 1

I.     STATEMENT OF FACTS .................................................................................. 2

     A.     OVERVIEW OF UNDERLYING LITIGATION AND ALLEGATIONS............ 2

     B.     OVERVIEW OF THE THIRD PARTY SUBPOENAS......................................... 4

          1.     History of the Subpoenas .................................................................. 4

          2.     Summary of Information Sought From Elliott, Mr. Singer and Ms. Kassel 5

     C.     QUIBI REJECTED ELLIOTT'S MEET AND CONFER EFFORTS ................. 6

II.     ARGUMENT ....................................................................................................... 7

     A.     ELLIOT, MR. SINGER, MS. KASSEL, AND QUIBI CONSENT AND THE COURT SHOULD TRANSFER THIS MOTION TO THE ISSUING COURT, THE CENTRAL DISTRICT OF CALIFORNIA. .................................................. 7

     B.     THE COURT SHOULD QUASH THE NEW YORK SUBPOENAS IN THEIR ENTIRETY. .......................................................................................................... 9

          1.     The Information Sought Is Not Relevant. .................................................. 9

               a.     Litigation funding information is not relevant.............................. 10

               b.     Communications with the press also are not relevant................... 12

               c.     Search optimization is not relevant............................................... 12

          2.     Most of the Information Sought by the New York Subpoenas Is Privileged. .......................................................................................... 13

          3.     The New York Subpoenas Pose An Undue Burden On Elliott. ............... 14

               a.     It is unduly burdensome to produce the requested documents because they are irrelevant and privileged..................................... 15

               b.     It is unduly burdensome to produce the requested documents because they can be more easily obtained from Eko. ................... 16

               c.     It is unduly burdensome to seek deposition testimony from Elliott, Mr. Singer and Ms. Kassel that is duplicative of the document requests. ....................................................................................... 18

d.    It is unduly burdensome to seek duplicative and cumulative deposition testimony from Mr. Singer and Ms. Kassel, who are apex employees ............................................................................ 19

C.    THE COURT SHOULD AWARD ELLIOTT ATTORNEYS' FEES ................. 20

III.   CONCLUSION ............................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
  No. 12-CV-7493, 2012 WL 6568226 (N.D. Ill. Dec. 14, 2012)..............................................18

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014)................................................................................15, 16, 18

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
  No. 20 MISC. 23, 2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020) ....................................20, 21

*Anwar v. Fairfield Greenwich Ltd.*,
  297 F.R.D. 223 (S.D.N.Y. 2013)........................................................................................14, 18

*In re Baden*,
  344 F. Supp. 3d 83 (D.D.C. 2018).............................................................................................9

*Benitez v. Lopez*,
  No. 17-CV-3827-SJ-SJB, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019)..........................10, 11

*U.S. v. Bergonzi*,
  216 F.R.D. 487 (N.D. Cal. 2003)........................................................................................13, 14

*Burns v. Bank of Am.*,
  No. 03 CIV.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ...............15, 18, 20

*In re Cassell*,
  2016 WL 3645166 ......................................................................................................................8

*CF&I Steel Corp. v. Mitsui & Co. (U.S.A.) Inc.*,
  713 F.2d 494 (9th Cir. 1983) .....................................................................................................4

*Citizens Union of City of New York v. Attorney Gen. of New York*,
  269 F. Supp. 3d 124 (S.D.N.Y. 2017).............................................................................9, 10, 15

*CSS, Inc. v. Herrington*,
  354 F. Supp. 3d 702 (N.D. Tex. 2017) .......................................................................................8

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
  No. 12-cv-080082-LHK (PSG) 2012 WL 1980361 (N.D. Cal. June 1, 2012) ..........................9

*Epistar Corp. v. Lowe's Companies, Inc.*,
  No. 3:17-MC-107-D-BN, 2017 WL 6729547 (N.D. Tex. Dec. 29, 2017) ................................8

*Fulton v. Foley*,
    No. 17-CV-8696, 2019 WL 6609298 (Dec. 5, 2019, N.D. Ill)......................................*passim*

*Hoist Fitness Systems, Inc. v. TuffStuff Fitness International, Inc.*,
    No. EDCV 17-1388-AB, 2018 WL 8193374 (C.D. Cal. May 14, 2018) ...............................13

*Mattel, Inc. v. Walking Mountain Productions*,
    353 F.3d 792 (9th Cir. 2003) .................................................22

*Miller Marital Deduction Trust v. Estate of Dubois*,
    No. 2:16-cv-01883-SB, 2018 WL 1023200 (E.D. Cal. February 21, 2018)............................9

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 14-CV-03657-SI, 2019 WL 118595 (N.D. Cal. Jan. 7, 2019) ...................................10, 11

*N. Atl. Operating Co., Inc. v Dunhuang Grp.*,
    C.A. No. 18-MC-154-LPS, 2018 WL 3381300 (D. Del. July 11, 2018)................................8

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) ...........................................18

*Northwestern Mem'l Hosp. v. Ashcroft*,
    362 F.3d 923 (7th Cir. 2004) ...............................................14

*Optimize Tech. Solutions, LLC. v. Staples, Inc.*,
    No. 14–MC–80095, 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) .........................................9

*Price v. Peerson*,
    No. 13-03390-PSG, 2014 WL 12687410 (C.D. Cal. March 10, 2014) ...................................21

*Robertson v. McNeil-PPC Inc.*,
    No. LACV1109050JAKSSX, 2014 WL 12576817 (C.D. Cal. Jan. 13, 2014)......................20

*San Juan Cable LLC v. DISH Network LLC*,
    No. CV 14-MC-00261-RM-MJW, 2015 WL 500631 (D. Colo. Jan. 23, 2015)......................8

*In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*,
    No. MDL 1428, 2006 WL 1328259 (S.D.N.Y. May 16, 2006)................................20

*Stanziale v. Pepper Hamilton LLP*,
    No. M8-85, 2007 WL 473703 (S.D.N.Y. Feb. 9, 2007) ...........................................8

*In re TQ Delta*,
    C.A. No. 17-MC-328-RG, 2018 WL 5033756 (D. Del. Oct. 17, 2018).....................14, 16, 17

*Tresona Multimedia, LLC v. Legg*,
    No. 15 C 4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015)..............................14, 15, 16, 17

LAACTIVE-604943354.6

*VHT, Inc. v. Zillow Grp., Inc.*,
    No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) ......................................11

*Wakefield v. Walt Disney Co.*,
    No. CV056857VBFPLAX, 2007 WL 9724382 (C.D. Cal. May 10, 2007)........................4, 21

*Yousefi v. Delta Elec. Motors, Inc.*,
    No. C13-1632RSL, 2015 WL 11217257 (W.D. Wash. May 11, 2015) ...............................11

*Youtoo Techs., LLC v. Twitter, Inc.*,
    No. 17-MC-80006-JSC, 2017 WL 431751 (N.D. Cal. Feb. 1, 2017).........................................8

### State Cases

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
    No. 20 MISC. 23 (S.D.N.Y. Aug. 13, 2020) ...................................................................21, 22

### Other Authorities

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................15

Fed. R. Civ. P. 26(b)(1)...................................................................................................................9

Fed. R. Civ. P. 45 ...................................................................................................................*passim*

Fed. R. Civ. P. 45(c) .......................................................................................................................1

Fed. R. Civ. P. 45(c)(3) .................................................................................................................10

Fed. R. Civ. P. 45(d) .........................................................................................................1, 21, 22

Fed. R. Civ. P. 45(d)(1)...........................................................................................................21, 22

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................................................1

Fed. R. Civ. P. 45(d)(3) ..........................................................................................................1, 15

Fed. R. Civ. P. 45(d)(3)(A)(iii) ....................................................................................................14

Fed. R. Civ. P. 45(d)(3)(A)(iv) ...............................................................................................13, 14

Fed. R. Civ. P. 45(e)(2)(B) .............................................................................................................1

Fed. R. Civ. P. 45(f).............................................................................................................1, 7, 8

LAACTIVE-604943354.6

## INTRODUCTION

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, Elliott Management Corporation ("Elliott"), Paul Singer, and Terry Kassel move to quash three subpoenas for the production of documents and for the depositions of a corporate representative, Mr. Singer, and Ms. Kassel issued by Quibi Holdings ("Quibi") that require compliance in this District (the "New York Subpoenas").[1] Elliott, Mr. Singer, and Ms. Kassel have commenced a proceeding in this Court as required by Rule 45(f) for purposes of bringing and transferring the motion to quash to the Central District of California, where the underlying case is pending.[2] Quibi consents to the transfer of this matter.[3]

The underlying litigation is a patent infringement and trade secret misappropriation dispute between Quibi and Interlude U.S., Inc. d/b/a eko ("Eko") pending in the Central District of California. There are two related cases: *Interlude U.S., Inc. d/b/a eko v. Quibi Holdings, et al.*, Case No. 2:20-cv-2299; and *Quibi Holdings v. Interlude U.S., Inc. d/b/a eko, et al.*, Case No. 2:20-cv-2250-CAS(SKx) (together, the "Eko-Quibi Litigation"). Elliott, Mr. Singer (Elliott's President, Co-CEO, and Co-Chief Investment Officer), and Ms. Kassel (Elliott's Head of Strategic Human Resources) are not parties to the Eko-Quibi Litigation. Elliott provides services to certain investment funds that are financing Eko's litigation against Quibi.

Elliott, Mr. Singer, Ms. Kassel and Quibi all consent to the transfer of this dispute to the Central District of California. Additionally, case law across the country makes it clear that the New York Subpoenas should be quashed. Communications between a party (Eko) and a

---

[1] The New York Subpoenas are attached as Exhibit A to the accompanying Declaration of Valerie Goo ("Goo Decl."), attached as Exhibit 1 to the accompanying Declaration of Rebecca Ricigliano.

[2] "Subdivision (f) is new. Under Rules 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c). Rule 45(f) provides authority for that court to transfer the motion to the court where the action is pending." 2013 Amendment Committee Comments to Fed. R. Civ. P. 45.

[3] Exhibit B to Goo Decl. at p. 1.

litigation funder (Elliott), and documents and information relating to the litigation funder's role (*e.g.,* knowledge of and assessment of the litigation) are not relevant, are privileged, and therefore are not discoverable in the underlying litigation. Further, it is well-established that a third party should not bear an undue burden of discovery where the requested information can be more easily obtained from Eko, a party to the litigation. Here, Quibi served the New York Subpoenas on Elliott and two of its apex employees, Mr. Singer and Ms. Kassel, seeking documents from all three <u>and</u> seeking depositions from all three on topics that are irrelevant and privileged. As demonstrated below, the New York Subpoenas should be quashed in their entirety because: (1) the information they seek is not relevant to any claims or defenses of the Eko-Quibi Litigation; (2) the majority of the information sought is privileged; and (3) they are unduly burdensome for third parties, particularly because of the lack of relevance of the information sought to the Eko-Quibi Litigation, and the availability of the information directly from Eko.

## I. STATEMENT OF FACTS

### A. OVERVIEW OF UNDERLYING LITIGATION AND ALLEGATIONS

The Eko-Quibi Litigation centers on claims that Quibi infringed Eko's patent and misappropriated Eko's trade secrets. On March 9, 2020, Quibi filed a complaint seeking declaratory judgment that it did not infringe Eko's U.S. Patent No. 10,460,765 (the "'765 patent") or misappropriate Eko's trade secrets.[4] On March 10, 2020, JBF Interlude U.S. 2009 – Israel (Eko's parent corporation) filed suit against Quibi for patent infringement of the '765 patent and trade secret misappropriation.[5] The Eko-Quibi Litigation has been hotly contested – with more than 500 entries on the combined dockets.[6] Both parties have filed motions to dismiss,

---

[4] Quibi's initial complaint, filed March 9, 2020 is attached as Exhibit C to the Goo Decl.
[5] Eko's initial complaint, filed March 10, 2020 is attached as Exhibit D to the Goo Decl.
[6] The dockets from the Eko-Quibi Litigation are attached as Exhibit E to the Goo Decl.

-2-

and both parties have filed amended complaints and added various entities.[7] Despite this, Elliott, Mr. Singer, and Ms. Kassel have never been named as parties, nor are they even mentioned in any of the complaints or answers. This is unsurprising given that Elliott is merely a service provider to the funds financing Eko's litigation funder, and Elliott, Mr. Singer, and Ms. Kassel were not involved in the events leading up to the Eko-Quibi Litigation.

Eko owns confidential and proprietary technology related to video streaming, including the '765 patent that discloses and describes responsive videos that change seamlessly based on device orientation.[8] Pursuant to a non-disclosure agreement, Eko shared secret details about this innovative technology with several employees of Snap, Inc., the developer of a multimedia messaging app called Snapchat.[9] Those same Snap employees then left Snap to work for Quibi, who used Eko's trade secret and proprietary technology to develop and incorporate it into an app and platform Quibi calls "Turnstyle."[10] Quibi then filed for a patent on the same Eko technology, listing the Snap employees as inventors.[11] In April, Quibi launched its Turnstyle platform that incorporated Eko's technology, despite Eko having earlier filed suit to protect its intellectual property rights.[12] Quibi's platform struggled and Quibi has now folded and is winding down the company. In connection with a motion for preliminary injunction filed by Eko, the Court has ordered that Quibi provide notice to the Court and Eko before distributing any assets to investors until there is a decision on the merits about Quibi's patent infringement and trade secret misappropriation.[13]

---

[7] *See* Exhibits C, D, E to Goo Decl.
[8] *See* Exhibit D to Goo Decl.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *See* Exhibit E to Goo Decl., at Dkt. No. 418.

LAACTIVE-604943354.6

Quibi served document requests on Eko, the party to the Eko-Quibi Litigation, seeking much of the same information sought in the New York Subpoenas.[14] Elliott understands that Eko has timely objected to Quibi's requests on relevancy and privilege grounds, as well as others, and that Quibi has not sought to meet and confer with Eko on those requests or made any other effort to obtain the documents. Merits discovery is still in its infancy, and the fact discovery cutoff is September 14, 2021.[15]

### B.   OVERVIEW OF THE THIRD PARTY SUBPOENAS

#### 1.   History of the Subpoenas

- On or about December 4, 2020, Quibi provided notice to Eko of its intent to serve four third party subpoenas: (1) on Elliott seeking compliance in Delaware on December 22; (2) on Elliott seeking compliance in New York on December 22; (3) on Mr. Singer seeking compliance in New York on December 28; and (4) on Ms. Kassel seeking compliance in New York on December 30.[16]

- On or about December 7, 2020, Quibi served the subpoena on Elliott seeking compliance in Delaware (the "Delaware Subpoena").

- On December 21, 2020, Quibi and Elliott agreed to extend the return date of the Delaware Subpoena to January 19, 2021. Elliott also agreed to accept service of the individual subpoenas to Mr. Singer and Ms. Kassel with an extension of the return to January 19, 2021 as well.[17]

- On January 12, 2021, Elliott agreed to accept service of the subpoena seeking Elliott's compliance in New York with an extension of the return date to January 19, 2021 and Quibi agreed to withdraw the Delaware Subpoena.[18]

- On January 13, 2021, Quibi served the subpoenas for Mr. Singer and Ms. Kassel,[19] along with the Elliott subpoena seeking compliance in New York. These three New York Subpoenas have a return date of January 19, 2021 and are

---

[14] Exhibit F to Goo Decl.

[15] *See* Exhibit E to Goo Decl., at Dkt. No. 200.

[16] Exhibit I to Goo Decl.

[17] Exhibit B to Goo Decl.

[18] *Id.*

[19] The subpoenas served by Quibi for Mr. Singer and Ms. Kassel did not tender the required witness fees, and should be quashed for this reason alone. *See Wakefield v. Walt Disney Co.*, No. CV056857VBFPLAX, 2007 WL 9724382, at *1 (C.D. Cal. May 10, 2007) (subpoena invalid on its face for failure to tender fees, even when the deposition was to be conducted telephonically) (quoting *CF &I Steel Corp. v. Mitsui & Co. (U.S.A.) Inc.,* 713 F.2d 494, 496 (9th Cir. 1983). Additionally, the served subpoenas are issued on December 8, 2020, and have different service addresses from the subpoenas attached to the Notice provided on December 4. *Compare* Exhibit A to Goo Decl. *with* Exhibit I to Goo Decl.

the subject of this motion to quash.[20]

**2.      Summary of Information Sought From Elliott, Mr. Singer and Ms. Kassel**

Elliott provides services to certain investment funds financing Eko's prosecution of the claims in the Eko- Quibi Litigation. Mr. Singer is Elliott's Founder, President, Co-CEO, and Co-Chief Investment Officer. Ms. Kassel is Elliott's Head of Strategic Human Resources. Elliott, Mr. Singer, and Ms. Kassel were not involved in the invention of the technology at issue in the underlying litigation, and have no unique personal knowledge of the facts and claims at issue in the Eko-Quibi Litigation. Despite Elliott's limited litigation funding role, the New York Subpoenas each include eight identical, overbroad, and irrelevant document requests for Elliott, Mr. Singer, and Ms. Kassel.[21] Quibi also seeks: (1) Elliott's corporate representative's deposition in New York on four similarly overbroad and irrelevant topics; (2) the deposition of Mr. Singer in New York; and (3) the deposition of Ms. Kassel in New York.[22] The information and documents sought from Elliott, Mr. Singer and Ms. Kassel fall into the following categories:

- Information about and communications related to Elliott's role as a litigation funder
  - Documents and testimony about communications between Elliott and Eko regarding Quibi or the Litigation (RFP 1, 7; Topic 2)[23]
  - Documents and testimony about any analyses of Eko or the Litigation, including any involvement by Elliott in the decision-making, conduct or funding of the Litigation (RFP 4, 5; Topic 1)[24]
  - Documents about any analyses of Eko's patents, including any patents previously owned or assigned by Eko (RFP 6)[25]
- Communications with the Press
  - Documents and testimony about communications between Elliott and any

---

[20] *See* Exhibit B to Goo Decl.
[21] *See* Exhibit A to Goo Decl.
[22] *Id.*
[23] *See* Exhibit A to Goo Decl. at pp. 6-7; 39-40, 72-73.
[24] *Id.*
[25] *Id.*

person (and specifically the press) regarding Quibi, the Litigation or Eko (RFP 2, 3; Topic 3)[26]

- Search Optimization
  - Documents relating to any efforts to optimize, target, or direct internet user search results for Quibi or the Litigation through search engines, including without limitation, Google Search, Microsoft Internet Explorer, or Bing (RFP 8)[27]
- Document Production
  - Elliott's efforts to produce documents responsive to the subpoena (Topic 4).[28]

As will be discussed in more detail in Sections II.B.1 and II.B.2, *infra*, none of the information sought by Quibi is relevant to the underlying litigation and the vast majority of the information requested is clearly privileged.

## C.    QUIBI REJECTED ELLIOTT'S MEET AND CONFER EFFORTS

Shortly after receiving the Delaware Subpoena on or about December 7, 2020, Elliott engaged outside counsel who immediately contacted Quibi's counsel on December 14, 2020 to request a reasonable extension of time to respond and to meet and confer on the propriety of the subpoenas and the scope of information sought.[29]

On December 21, 2020, after agreeing that the return dates, including any deadline to object or file motions, would be extended to January 19, 2021, Elliott and Quibi agreed to further meet and confer regarding the propriety of the subpoenas and the scope of information sought in the subpoenas.[30]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] Exhibit B to Goo Decl.
[30] *Id.*

LAACTIVE-604943354.6

Elliott and Quibi met and conferred on January 12, 2021 about the unduly burdensome nature of the subpoenas, in particular as they sought irrelevant and privileged information.[31]

The parties telephonically met and conferred again on January 15, 2021, and confirmed that they were at an impasse because counsel for Quibi could not identify any legal theory as to how information from a third party litigation funder would be relevant to any of the claims and defenses in the Eko-Quibi Litigation, given the prevailing law that litigation funding information is not generally relevant or discoverable.[32] Quibi also did not (and cannot) provide any legal authority to support its request for privileged information from Elliott.[33] Because Quibi refused to withdraw the New York Subpoenas, Elliott requested that Quibi seek the documents from Eko in the first instance, before proceeding with third party discovery.[34] Quibi refused and has thus compelled Elliott, Mr. Singer, and Ms. Kassel to file this motion to quash the New York Subpoenas, although Quibi has consented to transfer this motion to the Central District of California where the underlying litigations are pending.[35]

## II.    ARGUMENT

### A.    ELLIOT, MR. SINGER, MS. KASSEL, AND QUIBI CONSENT AND THE COURT SHOULD TRANSFER THIS MOTION TO THE ISSUING COURT, THE CENTRAL DISTRICT OF CALIFORNIA.

Federal Rule of Civil Procedure 45(f) states: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

Here, Elliott, Mr. Singer, and Ms. Kassel, the parties subject to the New York Subpoenas,

---

[31] Quibi provided proposed changes to the requests for production of documents when it served the New York Subpoenas on January 13, purportedly to narrow the scope of the subpoena. However, the proposed changes did not limit the requests in any meaningful manner, and still seek privileged information.
[32] Exhibit B to Goo Decl.
[33] Id.
[34] Id.
[35] Exhibit B to Goo Decl. at p. 1.

LAACTIVE-604943354.6

not only consent—but request—that this Court transfer the instant Motion to Quash to the issuing court, *i.e.*, the Central District of California.[36] Quibi also consents to the transfer.[37]

Because Elliott, Mr. Singer and Ms. Kassel request (and Quibi agrees to) the transfer, this Court "need not find [] extraordinary circumstances" in order to transfer this motion under Rule 45(f). *See Stanziale v. Pepper Hamilton LLP*, No. M8-85 (PART I) (CSH), 2007 WL 473703, at *6 (S.D.N.Y. Feb. 9, 2007) (transferring a motion to compel in the interests of justice and judicial efficiency where the subpoenaed nonparty was amenable to transfer and because the presiding judge in the underlying action was better positioned to evaluate the motion); *see also Youtoo Techs., LLC v. Twitter, Inc.,* No. 17-MC-80006-JSC, 2017 WL 431751, at *2 (N.D. Cal. Feb. 1, 2017); *Epistar Corp. v. Lowe's Companies, Inc.*, No. 3:17-MC-107-D-BN, 2017 WL 6729547, at *3 (N.D. Tex. Dec. 29, 2017) (citing *CSS, Inc. v. Herrington,* 354 F. Supp. 3d 702, 707) (N.D. Tex. 2017)); *San Juan Cable LLC v. DISH Network LLC,* No. CV 14-MC-00261-RM-MJW, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015).

Furthermore, even absent consent, there are sufficient grounds to transfer the instant motion to the Central District of California. Specifically, the Eko-Quibi Litigation has been heavily litigated in the Central District of California, including several motions to dismiss, preliminary injunction and temporary restraining order motions, and over 500 docket entries.[38] *See In re Cassell*, 2016 WL 3645166, at *1 (transferring motion to quash a non-party subpoena where the parties had "heavily litigated the [underlying] case, as evidenced by the 253 docket entries). As such, the issuing court in California is in the best position to assess whether and to what extent the New York Subpoenas target information that is relevant to the underlying patent

---

[36] Elliott, Mr. Singer and Ms. Kassel consent to jurisdiction in the Central District of California solely for the purposes of resolving this motion.
[37] *Id.*
[38] *See* Exhibit E to the Goo Decl.

infringement and trade secret misappropriation claims or any asserted defenses. *See N. Atl. Operating Co., Inc. v Dunhuang Grp.,* C.A. No. 18-MC-154-LPS, 2018 WL 3381300, at *2 (D. Del. July 11, 2018) (finding that extraordinary circumstances existed, such that transfer of the subpoena-related motion to compel was warranted "so as to not disrupt the issuing court's management of the Underlying Action."); *see also In re Baden*, 344 F. Supp. 3d 83, 89 (D.D.C. 2018) (transferring motion to quash by request of subpoenaed party, as well as transferring motions to quash where transfer was opposed by subpoenaed party in part because the issuing court would be better suited to determine the relevance of the information sought).

### B.   THE COURT SHOULD QUASH THE NEW YORK SUBPOENAS IN THEIR ENTIRETY.

#### 1.   The Information Sought Is Not Relevant.

If the information sought by a subpoena is not relevant, then it is beyond the scope of Rule 26(b)(1), and the court should quash the subpoena. Fed. R. Civ. P. 45; *see also, e.g., Fulton v. Foley,* No. 17-CV-8696, 2019 WL 6609298, at *2 (Dec. 5, 2019, N.D. Ill) (quashing subpoena), *Miller Marital Deduction Trust v. Estate of Dubois*, No. 2:16-cv-01883-SB, 2018 WL 1023200, at *3 (E.D. Cal. February 21, 2018) (quashing subpoena that seeks irrelevant information because "[w]hile irrelevance is not within the list of reasons enumerated to quash a subpoena, it would be an undue burden on a nonparty to require it to produce information that is not relevant to the action."); *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 148, 179 (S.D.N.Y. 2017) (quashing subpoena).

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Solutions, LLC. v. Staples, Inc.,* No. 14–MC–80095, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (internal quotation marks and citation omitted); *see also EON Corp. IP Holdings, LLC v.*

*T-Mobile USA, Inc.,* No. 12-cv-080082-LHK (PSG) 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012) ("Although the party who moves to quash has the burden of persuasion under Rule 45(c)(3), the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.") (internal quotation marks and citation omitted); *Citizens Union of City of New York*, 269 F. Supp. 3d at 139 ("Plaintiffs, as the parties seeking discovery from the [third-party], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Here, Quibi cannot meet its burden to show that the information or documents sought from non-party Elliott, Mr. Singer, or Ms. Kassel is relevant to the Eko-Quibi Litigation, and Elliott, Mr. Singer, and Ms. Kassel should not be required to produce any documents or any deposition testimony.

### a.    Litigation funding information is not relevant.

The information sought by Quibi in the New York Subpoenas relates to Elliott's role in funding Eko's litigation. "As a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case." *See, e.g., Fulton,* 2019 WL 6609298, at *2 (quashing subpoena and collecting cases); *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (denying discovery related to third party litigation funding as "not relevant"); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1-3 (E.D.N.Y. Mar. 14, 2019) (denying a motion to compel litigation funding documents where defendants failed to establish that such discovery was relevant to any party's claims or defense).

At the outset, there is nothing about the fact that Eko has obtained litigation funding that makes it more or less probable that Quibi misappropriated Eko's trade secrets or infringed on Eko's patents, which are the issues in the underlying litigation.[39] Indeed, courts routinely refuse to order a party to the litigation to produce litigation funding information because it is not relevant. *See MLC Intellectual Prop., LLC*, 2019 WL 118595, at *2 (denying discovery from a party about third party litigation funding as "not relevant"); *Benitez*, 2019 WL 1578167, at *2 (same); *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) (same); *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue.").

The communications Quibi seeks between Eko and Elliott about Quibi or the Eko-Quibi Litigation would also include privileged communications from Eko's counsel about litigation strategy, counsel's description of the case, and counsel's assessment of the strengths and weaknesses of the case. *See* Section II.B.2, *infra.* In addition to being privileged, none of these categories are relevant to the litigation, because "counsel's opinions and thoughts are not facts." *See Fulton,* 2019 WL 6609298, at *3 (quashing subpoena). Likewise, Elliott's internal analyses of Eko or the Eko-Quibi Litigation would include privileged communications and reflection of counsel's thoughts and advice, which are not relevant. Similarly, any internal analyses of Eko's patents conducted by Elliott's counsel (or on its behalf) are not relevant. The opinions and analyses of Elliott, a third party, on the strengths and weaknesses of the claims in the litigation or

---

[39] Elliott attempted to meet and confer with Quibi regarding the relevancy of the information sought, but Quibi did not identify the relevance to the underlying litigation, nor any legal authority that held a third party must produce the type of information it seeks. *See* Exhibit B to Goo Decl. Neither Elliott's role as a litigation funder, nor any of its internal privileged analysis of the litigation, are relevant to the underlying claims and defenses here.

of Eko's patent are not relevant. *See id.*

### b.  Communications with the press also are not relevant.

Quibi also seeks documents and deposition testimony about Elliott's communications with the press. A third party's statements to the press are not relevant. Further, any articles in news publications are publicly available, and Quibi can obtain the documents just as easily as Elliott, Mr. Singer, or Ms. Kassel. Whether or not there were any underlying communications between Elliott, Mr. Singer, or Ms. Kassel and the press about the articles has no bearing on the issues in this litigation—they are not Eko. Eko accused Quibi of patent infringement and trade secret misappropriation. The case was of course of interest to the press the moment Quibi chose to steal Eko's technology and make public statements regarding the case and its business. And any press article regarding the litigation comes long after the facts being litigated as to whether or not Quibi is liable. For example, one such article merely reported that Elliott was funding Eko's litigation.[40] Information from Elliott regarding this article, if any exists, is not relevant because information about litigation funding is not relevant. *See* Section II.B.1, *supra.*

### c.  Search optimization is not relevant.

The request for documents regarding search optimization is truly baffling. Quibi seeks documents about any efforts to optimize or target search results related to Quibi or the Eko-Quibi litigation. This has nothing to do with trade secret misappropriation or patent infringement—which are the claims at issue in the Eko-Quibi Litigation. The patent and trade secrets at issue relate to video technology. Internet search results for queries regarding Quibi or the Eko-Quibi Litigation have nothing to do with the technology or the claims and defenses at issue in the litigation.

---

[40] *See, e.g.,* https://nypost.com/2020/05/04/elliot-management-funds-lawsuit-against- katzenbergs-quibi/. A true and correct copy is attached as Exhibit G to the Goo Decl.

2.     **Most of the Information Sought by the New York Subpoenas Is Privileged.**

Rule 45 further requires a court to quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iv).

The New York Subpoenas seek documents and testimony related to Elliott's role in funding Eko's litigation against Quibi. This information is not relevant, but even if it were, it would still be protected from production by the attorney-client and work product privileges. As described above, the majority of any responsive documents would likely include counsel's mental impressions. Such documents are protected by the attorney work-product doctrine. *See Fulton*, 2019 WL 6609298, at *3 (collecting cases where courts have held that litigation funding documents are protected by the work product doctrine).[41]

Eko's privileged documents and information that are shared with Elliott, as a third party litigation funder, do not waive such protection. *See id; see also Hoist Fitness Systems, Inc. v. TuffStuff Fitness International, Inc.*, No. EDCV 17-1388-AB (KKx), 2018 WL 8193374, at *8 (C.D. Cal. May 14, 2018) (denying motion to compel defendant to produce document because disclosure to litigation funder did not waive work product protection). The common interest privilege protects any privileged documents and communications exchanged between Elliott and Eko. *See U.S. v. Bergonzi,* 216 F.R.D. 487 (N.D. Cal. 2003). Information and documents are subject to the common interest privilege when: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* Here, Eko and Elliott have a common

---

[41] If the Court applies the law of the forum for the underlying litigation, California Civil Procedure also protects counsel's mental impressions. C.C.P. 2018.030(a) ("A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.").

interest privilege: they have a common interest in the litigation; their communications about the litigation further that effort; and there is no basis to believe the privilege has been waived. Thus, the New York Subpoenas clearly seek privileged information, further protected from waiver by the common interest privilege.

The Court therefore must quash the New York Subpoenas to the extent they seek privileged information. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Fulton*, 2019 WL 6609298, at *3 (quashing subpoena that sought privileged information protected by a common interest from a litigation funder).

### 3. The New York Subpoenas Pose An Undue Burden On Elliott.

A court must quash a subpoena if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii). An undue burden exists when "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Tresona Multimedia, LLC v. Legg,* No. 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015) (quoting *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir. 2004)); *Anwar v. Fairfield Greenwich Ltd*., 297 F.R.D. 223, 228 (S.D.N.Y. 2013), ("In deciding the reasonableness of the subpoena, the Court must 'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'"). Courts consider various factors when determining whether a burden is undue, including: (a) status as a non-party; (b) relevance of the discovery sought; (c) the requesting party's need for documents; (d) the breadth of the request; and (e) the burden imposed on the subpoenaed party. *Tresona Multimedia*, 2015 WL 4911093, at *2*; see also In re TQ Delta,* C.A. No. 17-MC-328-RG, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018) (also including the time period covered and the particularity with which the documents are described as factors in determining undue burden); *Citizens Union of City of New York*, 269 F. Supp. 3d at 124 (same). In particular, the status as a

non-party is given special importance. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406, 409 (C.D. Cal. 2014) (quashing subpoena in part because "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry") (internal quotation omitted).

Additionally, Federal Rule of Civil Procedure 26(b)(2)(C) describes conditions wherein a court must limit the frequency or extent of discovery otherwise allowed by the local or Federal Rules. Therefore, irrespective of Rule 45(d)(3), a district court may still quash or modify a subpoena if such subpoena seeks discovery that is: (a) unreasonably cumulative or duplicative; (b) can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (c) if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. *See Tresona Multimedia,* 2015 WL 4911093, at *3 (quoting Fed. R. Civ. Proc. 26(b)(2)). For example, "[a] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Id.; see also Amini Innovation Corp.*, 300 F.R.D. at 409-410 (quashing subpoena); *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (quashing subpoena).

Here, all of the factors weigh in favor of quashing the New York Subpoenas.

> **a.     It is unduly burdensome to produce the requested documents because they are irrelevant and privileged.**

Notably, "[b]ecause of the different expectations for non-parties in accepting the burdens of litigation, 'courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs.'" *Tresona Multimedia,* 2015 WL 4911093, at *2 (internal citation omitted). Therefore, requests for production that are overbroad and seek irrelevant information may impose an undue burden on the subpoenaed party. *Id.* at 5 ("Furthermore Tresona's requests

impose an undue burden of litigation on a non-party because they are overbroad and include irrelevant information"); *see also In re TQ Delta,* 2018 WL 5033756, at *2; *Amini Innovation Corp.,* 300 F.R.D. at 409.

Here, the New York Subpoenas are overly broad and unduly burdensome because they seek information that is not relevant to the underlying litigation and likely consist of entirely privileged communications. As discussed above, the information sought has no relevance to the underlying Eko-Quibi Lawsuit. Quibi also has not identified any reason why Quibi needs the documents, or any factual issues as to which the requested information relates. On the other hand, the burden on Elliott, Mr. Singer, and Ms. Kassel in responding to the New York Subpoenas would be great. Elliott has run initial search terms and there are approximately 14,000 documents that would likely need to be collected and reviewed for responsiveness and privilege in response to Quibi's overbroad requests.[42] In fact, many of the search results included at least one of Elliott's in-house attorneys. Given that courts have found the information requested by Quibi to be both irrelevant and privileged, it would be unduly burdensome to force Elliott to undertake the time and expense of reviewing thousands of non-discoverable documents. Because the burden to Elliott, Mr. Singer, and Ms. Kassel substantially outweighs any possible benefit to Quibi from obtaining the documents or testimony, the New York Subpoenas should be quashed.

> **b.     It is unduly burdensome to produce the requested documents because they can be more easily obtained from Eko.**

Furthermore, whatever minimally relevant and non-privileged information that exists (to the extent it does) should be obtained from Eko in the first instance. *See Tresona Multimedia, LLC,* 2015 WL 4911093, at *4 (quashing categories of subpoena requests to the extent they

---

[42] The requests are facially overbroad. For example, they seek "all documents" about Quibi, untethered to the underlying litigation, or "all documents" about any of Eko's patents, not only the '765 patent at issue in the underlying litigation. *See* Exhibit A to Goo Decl.

sought information available from the parties to the underlying action); *see also In re TQ Delta,* 2018 WL 5033756, at *2 (finding that the breadth of certain of the defendant's subpoena requests combined with the lack of limitation or specificity imposed an undue burden on the subpoenaed non-party, where many of the requests were "for information that could be acquired from either the Plaintiff itself or publicly available sources"); *Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena in part because "[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party[.]"); *Burns,* 2007 WL 1589437, at *13-14 (quashing a subpoena to non-party witness in part because it is "preferable" to obtain documents from a party and because the requests were duplicative). Subpoenas may be characterized as unduly burdensome where the requests are cumulative and duplicative of discovery requests made to a party to the litigation. *Ameritox, Ltd. v. Millennium Labs., Inc.,* No. 12-CV-7493, 2012 WL 6568226, at *3 (N.D. Ill. Dec. 14, 2012); *see also Amini Innovation Corp.*, 300 F.R.D. at 409-410 ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."); *Anwar*, 297 F.R.D. at 226 (Courts "consider whether the information is necessary and whether it is available from any other source.").

In fact, Quibi has requested the same documents from Eko.[43] Eko objected that the communications with Elliott are not relevant and are privileged.[44] Rather than meet and confer with Eko on their objections, or seek to compel Eko to produce the documents, Quibi is attempting to obtain the same information from Elliott, Mr. Singer and Ms. Kassel.

Quibi has had (and still has) ample opportunity to obtain most of the requested information directly from Eko, but has not even moved the court to compel the production of

---

[43] *See* Exhibit F to Goo Decl.
[44] *See id.*

such information from Eko. Even assuming relevance of the documents requested, it was reported in the press that Elliott agreed to fund Eko's suit back in May 2020.[45] Indeed, Quibi was certainly aware of Elliott's involvement as it was reported in June 2020 that Quibi had hired a private investigator to obtain information on Paul Singer (Elliott's CEO).[46] Eko supplemented its responses to Quibi's requests (and refused to produce any documents) in November 2020.[47] Rather than meet and confer with Eko on its objections to Quibi's requests, or seek the Court's assistance in obtaining the information from Eko, Quibi instead attempted to obtain the discovery from third parties—Elliott and two apex employees. Quibi has unreasonably refused to withdraw the New York Subpoenas while it seeks the same information from Eko (or obtain Court order resolving Eko's objections), instead requiring non-parties Elliott, Mr. Singer and Ms. Kassel to litigate the issue. Moreover, the discovery cutoff is not until September 2021, which affords Quibi time to resolve any document and testimony disputes with Eko without prejudice to obtaining additional information from third parties. It is unreasonable to impose a greater burden on third parties when Quibi has done nothing to meet and confer with Eko, a party, to obtain the same information requested.

> ### c. It is unduly burdensome to seek deposition testimony from Elliott, Mr. Singer and Ms. Kassel that is duplicative of the document requests.

As discussed above, the document requests to Elliott, Mr. Singer and Ms. Kassel are identical, and are duplicative and cumulative to the information sought from Eko. But Quibi is not just seeking duplicative documents, the New York Subpoenas also seek duplicative

---

[45] *See, e.g.,* https://nypost.com/2020/05/04/elliot-management-funds-lawsuit-against-katzenbergs-quibi/. A true and correct copy is attached as Exhibit G to the Goo Decl.

[46] A copy of the article can be found at https://nypost.com/2020/06/16/jeffrey-katzenberg-resorting-to-unusual-tactics-to-avoid-quibi-suit/. A true and correct copy is attached as Exhibit H to the Goo Decl.

[47] Exhibit F to Goo Decl.

deposition testimony from Elliott, Mr. Singer, and Ms. Kassel. Quibi offers no reason why the production of documents would be insufficient. For all the same reasons that the document requests are unduly burdensome, so are the depositions. None of the information that can be obtained by deposing Elliott, Mr. Singer, or Ms. Kassel is relevant to the Eko-Quibi Litigation, and the majority will be privileged. *See* Section II.B.2, *supra*. Thus, because the testimony sought would have limited, if any, relevance, the depositions of Elliott, Mr. Singer, and Ms. Kassel would impose an undue burden and expense.

> **d.     It is unduly burdensome to seek duplicative and cumulative deposition testimony from Mr. Singer and Ms. Kassel, who are apex employees.**

Furthermore, Mr. Singer and Ms. Kassel are apex employees. When a party seeks the deposition of an "apex" of a corporation, courts have the discretion to limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Robertson v. McNeil-PPC Inc.*, No. LACV1109050JAKSSX, 2014 WL 12576817, at *16 (C.D. Cal. Jan. 13, 2014) (citation omitted) (holding apex doctrine applies to bar deposition of former executive). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id*. (internal quotations omitted). Courts also consider the likelihood of harassment and business disruption in deciding whether to allow discovery of corporate executives. *Burns*, 2007 WL 1589437, at *3 (denying a motion to compel the deposition of an apex employee) (citations omitted); *see also In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria,* No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) ("Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action.").

There is no evidence that Mr. Singer or Ms. Kassel have any unique knowledge that could not be obtained from Eko. The subpoenas to these individuals seek the same documents and testimony as the subpoena to Elliott (and Eko). Quibi's request to depose them as individuals, in addition to a 30(b)(6) representative of Elliott, is unreasonably duplicative and burdensome. *See Price v. Peerson,* No. 13-03390-PSG (JEMx), 2014 WL 12687410, at * 1 (C.D. Cal. March 10, 2014) (quashing deposition subpoena because the information sought could be obtained from the party, who would be far more knowledgeable than third party); *Wakefield v. Walt Disney Co.*, No. CV 05-6857-VBF (PLAx), 2007 WL 9724382, at * 1 (C.D. Cal. May 10, 2007) (quashing deposition subpoena because "plaintiff has not made a showing of the likelihood of finding relevant, responsive information from a deposition"). Quibi's sole purpose in pursing the exact same discovery from these individuals appears to be to improperly burden and harass third parties.

### C.    THE COURT SHOULD AWARD ELLIOTT ATTORNEYS' FEES

Elliott is entitled to recover its attorneys' fees in connection with responding to the subpoena and filing this motion. Under Fed. R. Civ. P. 45(d)(1) "[a] party or attorney responsible for issuing or serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." This is a mandatory duty on the issuer of the subpoena. When the duty to take reasonable steps to minimize the burden on a third party has been violated, Rule 45(d) provides: "the court for the district where compliance is required must enforce this duty and impose an appropriate sanction - which may include lost earnings and reasonable attorneys' fees - on a party or attorney who fails to comply." *See also Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 MISC. 23, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) ("Sanctions are properly imposed and attorney's fees are awarded where . . . the party

improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash."). The Court should award Elliott its attorneys' fees because Quibi's actions appear to be for the purpose of annoying and harassing Elliott and its apex employees. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th Cir. 2003) (awarding attorneys' fees for issuance of subpoenas in bad faith as evidenced by duplicative, overbroad subpoenas seeking irrelevant information "served for the purpose of annoying and harassment and not really for the purpose of getting information."); *Angelo, Gordon & Co.*, 2020 WL 4700910, at *3 (awarding attorneys' fees for issuance of and refusal to withdraw subpoenas that sought unnecessary, duplicative, and readily available information).

Here, Quibi is intentionally seeking irrelevant and privileged information in what appears to be an attempt to harass a third party. Additionally, Quibi should have sought documents or testimony from Elliott only after attempting to obtain the documents from a party to the suit— Eko. Quibi did not do this.

Instead, Quibi has acted unreasonably. First, Quibi served only the Delaware subpoena to Elliott which sought compliance in Delaware, more than 100 miles from Elliott's headquarters in violation of Rule 45. And Quibi refused to withdraw this defective and improper subpoena for over a month. This indicates bad faith, as Quibi could have simply served the subpoena seeking compliance in New York City – where Elliott is located – instead of seeking to increase the burden of compliance.

Second, Quibi has now served three nearly identical subpoenas, seeking the same information from Elliott and two of its high-level executives. These subpoenas are also duplicative of the discovery requests to Eko, which Quibi inexplicably refuses to pursue. These duplicative and cumulative subpoenas are further evidence of bad faith. Quibi's subpoenas seek

-21-

wholly irrelevant information, and clearly privileged information, from multiple third parties. Elliott requests that Rule 45(d) be applied here and that the Court award Elliott its attorneys' fees in connection with responding to the subpoena served by Quibi, including this motion. *See* Fed. R. Civ. P. 45(d)(1).[48]

## III.   CONCLUSION

For the foregoing reasons, Elliott, Mr. Singer and Ms. Kassel respectfully request that the Court transfer this action to the issuing Court, the Central District of California, upon the consent of Elliott, Mr. Singer, Ms. Kassel and Quibi. Additionally, Elliott, Mr. Singer and Ms. Kassel respectfully request that the Court quash the New York Subpoenas in their entirety and award Elliott, Mr. Singer and Ms. Kassel their attorneys' fees incurred in responding to the New York Subpoenas, including this motion.

Dated: January 19, 2021

CROWELL & MORING LLP

By: _Rebecca M. Ricigliano_

Rebecca Monck Ricigliano
RRicigliano@crowell.com
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: 212.223.4000

OF COUNSEL:
Valerie Goo (CA SBN 187334)
VGoo@crowell.com
Raija Horstman (CA SBN 277301)
RHorstman@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750

Attorneys for Third Parties
Elliott Management Corporation, Paul Singer
and Terry Kassel

---

[48] Elliott will submit substantiation for its attorneys' fees at an appropriate time, should the Court grant attorneys' fees.