MICHAEL A. JACOBS (CA SBN 111664)
THOMAS J. PARDINI (CA SBN 313401)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
mjacobs@mofo.com; tpardini@mofo.com

BENJAMIN J. FOX (CA SBN 193374)
RYAN J. MALLOY (CA SBN 253512)
SOO J. PARK (CA SBN 300988)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
bfox@mofo.com; rmalloy@mofo.com;
spark@mofo.com

Attorneys for Defendant
QUIBI HOLDINGS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JBF INTERLUDE 2009 LTD - ISRAEL,<br><br>Plaintiff,<br><br>v.<br><br>QUIBI HOLDINGS, LLC,<br><br>Defendants, | Case No.: 2:21-MC-00016-CAS-SKx<br><br>(to be related to 2:20-cv-02250-CAS-SKx and 2:20-cv-02299-CAS-SKx)<br><br>**OPPOSITION TO ELLIOTT MANAGEMENT, PAUL SINGER, AND TERRY KASSEL'S MOTION TO QUASH SUBPOENAS AND CROSS-MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND ........................................... 3

    A.   Elliott's Involvement With Eko and the Underlying Litigation ........... 3

    B.   Quibi's Efforts to Obtain the Discovery at Issue Here ....................... 5

III. APPLICABLE LEGAL STANDARDS ............................................... 6

IV.  ARGUMENT ....................................................................................... 7

    A.   Elliott's Communications with Eko Concerning the Merits of Eko's Claims Are Relevant and Likely to Reveal the Reasonableness of Eko's Continued Prosecution ................................. 7

    B.   Elliott's Information Concerning the Value of Eko's Claims And the Technology At Issue Are Relevant to Damages ..................... 9

    C.   Elliott's Involvement in This Litigation Is Relevant to Quibi's Claim for Fees and Eko's Standing on Its Patent Claims .................. 11

    D.   Elliott's Vague Assertions of Privilege Are Improper and Do Not Support Its Refusal to Provide Discovery .................................. 13

        1.   Eko and Elliott's discussions about the case and Eko's technology are not protected as attorney work product. .......... 13

        2.   The communications between Elliott and Eko are not confidential attorney-client communications. .......................... 14

        3.   The common interest doctrine does not apply to Elliott's information or any Eko-Elliott communications. ...................... 16

    E.   Quibi Seeks Information in Elliott's Possession—Including Information That May Be Solely in Elliott's Possession .................... 17

V.   CONCLUSION ................................................................................ 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16–453–RGA, 2018 U.S. Dist. LEXIS 2150,
    2018 WL 798731 (D. Del. Feb. 9, 2018) ...................................................... 7, 14

*Applied Materials, Inc. v. Multimetrixs, LLC*,
    No. 06–07372,  2009 U.S. Dist. LEXIS 44061,
    2009 WL 1457979 (N.D. Cal. May 26, 2009) ................................................. 11

*Bazzo v. Asuncion*,
    No. 16-07730, 2017 U.S. Dist. LEXIS 225772,
    2017 WL 10560631 (C.D. Cal. Aug. 28, 2017) ................................................ 6

*Bristol-Myers Squibb Co. v. Kite Pharma Inc.*,
    No. 2:19-mc-00055, 2019 U.S. Dist. LEXIS 230564,
    2019 WL 8589409 (C.D. Cal. May 29, 2019) ................................................ 12

*Cobra Int'l Inc. v. BCNY Int'l, Inc.*,
    No. 05–61225, 2013 U.S. Dist. LEXIS 190268,
    2013 WL 11311345 (S.D. Fla. Nov. 4, 2013) ................................................ 12

*Cont'l Circuits LLC v. Intel Corp.*,
    435 F. Supp. 3d 1014 (D. Ariz. 2020) .............................................................. 10

*Copetillo v. Fontana*,
    No. 5:19-cv-01959, 2020 U.S. Dist. LEXIS 245985,
    2020 WL 7861977 (C.D. Cal. Nov. 24, 2020) ................................................ 18

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    335 F.R.D. 510 (N.D. Ill. 2020) ........................................................................ 16

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
    No. C11–5503, 2015 U.S. Dist. LEXIS 4535
    2015 WL 196713 (W.D. Wash. Jan. 14, 2015) ..................................... 13, 15, 16

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
    No. 12–CV–080082, 2012 U.S. Dist. LEXIS 76467,
    2012 WL 1980361 (N.D. Cal. June 1, 2012) .................................................... 8

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ................................................................. 6

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*,
   No. EDCV 17-1388, 2018 U.S. Dist. LEXIS 228958
   2018 WL 8193374 (C.D. Cal. May 14, 2018) ..................................... 14

*Impact Engine, Inc. v. Google LLC*,
   No. 19-cv-1301,
   2020 U.S. Dist. LEXIS 145636 (S.D. Cal. Aug. 12, 2020) ................. 9

*In re Imperial Corp. of Am.*,
   179 F.R.D. 286 (S.D. Cal. 1998) ......................................................... 17

*Iris Connex, LLC v. Dell, Inc.*,
   235 F. Supp. 3d 826 (E.D. Tex. 2017) ................................................ 11

*Kandypens Inc. v. Puff Corp.*,
   No. CV 20-0358, 2020 U.S. Dist. LEXIS 246877,
   2020 WL 7978226 (C.D. Cal. Dec. 7, 2020) ...................................... 15

*Le v. Zuffa, LLC*,
   321 F.R.D. 636 (D. Nev. 2017) ...................................................... 13, 14

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019) .......................................................... 12

*MLC Intellectual Property, LLC v. Micron Tech., Inc.*,
   No. 14-cv-03657, 2019 U.S. Dist. LEXIS 2745,
   2019 WL 118595 (N.D. Cal. Jan. 7, 2019) ....................................... 8, 9

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) .......................................... 15, 16, 17

*Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 3:15-cv-01738, 2016 U.S. Dist. LEXIS 188611,
   2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ................................... 10

*Optimize Tech. Sols., LLC v. Staples, Inc.*,
   No. 14–mc–80095, 2014 U.S. Dist. LEXIS 52214,
   2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) ............................... 8, 10

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) .............................................................. 7

*Realtek Semiconductor Corp. v. LSI Corp.*,
    No. 5:14–mc–80197,
    2014 WL 4365114 (N.D. Cal. Sept. 3, 2014) ........................................ 6

*Regents of the Univ. of Cal. v. Affymetrix, Inc.*,
    No.: 17-cv-01394, 2018 U.S. Dist. LEXIS 173746,
    2018 WL 4896066 (S.D. Cal. Oct. 9, 2018) ............................... 6, 15, 17

*In re Subpoena to PayPal Holdings, Inc.*,
    No. 20-mc-80041, 2020 U.S. Dist. LEXIS 102530,
    2020 WL 3073221 (N.D. Cal. June 10, 2020) ..................................... 9

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ............................................................. 6

*Uniloc USA, Inc. v. Apple, Inc.*,
    No. C 18-00358, 2020 U.S. Dist. LEXIS 228257,
    2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) ..................................... 12

*United States v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ........................................................... 13

*United States v. Ruehle*,
    583 F.3d 600 (9th Cir. 2009) ........................................................... 14

*V5 Techs. v. Switch, Ltd.*,
    334 F.R.D. 306 (D. Nev. 2019) .................................................. 11, 13

*Xcentric Ventures, LLC v. Arden*,
    No. C 09-80309, 2010 U.S. Dist. LEXIS 13076
    2010 WL 424444 (N.D. Cal. Jan. 27, 2010) ..................................... 11

**Statutes and Rules**

Fed. R. Civ. P. 26(b) ......................................................... 6, 13, 14

iv

# I.    INTRODUCTION

In this litigation, plaintiff Eko seeks more than $100 million on claims for patent infringement and trade secret misappropriation that the Court held at the preliminary injunction stage are not likely to succeed.  (Dkt. 418.)[1]  To defend itself, Quibi has sought reasonable, tailored discovery from Eko and its financial backer, Elliott Management, concerning their non-privileged communications about the merits of the litigation, Eko's alleged damages, and who is driving the litigation for Eko.  Both Eko and Elliott have resisted this discovery at every turn.

Elliott and its principal Paul Singer have inserted themselves into this litigation by taking an equity stake in Eko or the litigation's outcome and using their press connections to bully Quibi through stories pitched to the *Wall Street Journal*, *Politico*, and other media outlets.  Elliott has also publicly expressed its confidence in the merits of Eko's claims—and touted its principal Mr. Singer's political connections as imperiling Quibi's CEO's future employment if Quibi does not meet Eko's extortionate $100 million demand.

The discovery sought from Elliott, its principal, and the head of its HR department, Terry Kassel, is relevant, proportional to the needs of the case, and may well be in Elliott's sole possession.  For example:

1.  Communications between Elliott and Eko concerning the merits of Eko's claims are relevant and may reveal whether Eko has a basis for continuing to prosecute its lawsuit.  Any potential investor in high-stakes litigation of this type would expect to see the documents through which Eko alleges it disclosed its "Optimized Real Time Switching" trade secret to the employees who later joined Quibi.  Despite requests, Eko has failed to produce to Quibi any document showing that Eko made such a disclosure.  Eko also has not identified any document

_____

[1] (RJN Ex. A.)  References to the docket in the underlying litigation are to Eko's second-filed lawsuit, No. 2:20-CV-02299-CAS-SK.  For ease of reference, Quibi is submitting key cited materials with a Request for Judicial Notice.

showing that it ever used its claimed trade secret.  Eko's discovery responses concerning its implied contract and patent claims reflect similar holes in the evidence Eko will need to succeed.  Defendants are entitled to know what Eko said about these important subjects to Elliott to induce Elliott's investment in the company or the lawsuit's outcome.  The information is non-privileged, discoverable, and will not impose an undue burden.

2.  Elliott and Eko's discussions and Elliott's analysis of the value of the patents-in-suit and the claimed ORTS trade secret are relevant to damages.  Like their discussions on the merits of Eko's claims, an analysis of the market value of the patents-in-suit or the trade secret will be probative of the damages Eko may pursue for the alleged infringement and misappropriation.  Eko's disclosures to Elliott concerning the value of the technology at issue are discoverable—just as Eko's communications with any other third party would be.  Elliott does not deny possessing such information.  Again, any reasonable potential investor in a company betting on litigation would expect to receive this information.

3.  Quibi has put Eko on notice that it intends at the conclusion of the litigation to seek its fees and costs incurred in defending claims that after a full year show no sign of merit.  Elliott's public disclosures to the media — and Eko's recent Amended Notice of Interested Parties (RJN, Ex. B (Dkt. 419)) — reflect that Elliott is playing a substantial behind-the scenes role in this litigation and has potential liability for Quibi's fees.  Quibi is entitled to know whether Elliott or its principal, Mr. Singer, are the real parties in interest here, before additional fees are invested in the defense and pursuit of Quibi's declaratory relief action.

Elliott's other arguments for resisting discovery are meritless.  Its vague claims of privilege are not supported by the specific showing required by the Federal Rules, or by the case law Elliott cites.  Elliott has provided no privilege log or other specific designation needed to claim a privilege.  And factual information is not protected from discovery simply by Elliott claiming it has some interest in

shielding the information.

Elliott's undue burden arguments fail as well.  Nothing in the record shows that Elliott's documents related to the case or its investment in Eko are so voluminous as to frustrate production, or that Mr. Singer and Ms. Kassel cannot appear for a remote deposition via videoconference.  No declaration attests to the hours that would be required to gather and produce the requested documents, or that a deposition is beyond Singer and Kassel's abilities.  Accordingly, Elliott and its executives have not met their heavy burden of showing that the requested discovery is privileged, irrelevant, or would impose an undue burden.

For all the reasons discussed below, the motion to quash should be denied. Elliott, Singer, and Kassel should be ordered to produce the requested documents and to appear for their depositions within 10 days of a ruling.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Elliott's Involvement With Eko and the Underlying Litigation

Elliott has disclosed publicly its significant involvement in this litigation, despite Eko's reluctance to disclose that information in court filings.  On May 4, 2020, days before the hearing on Eko's first preliminary injunction motion, the *Wall Street Journal* reported that Elliott and Mr. Singer were financing Eko's lawsuit for "an equity stake."  (Jacobs Decl., Ex. 1.)  The Journal noted that "[t]he size of the equity stake couldn't be learned, though it is a substantial investment." (*Id.*)  But Eko's corporate disclosure statement filed May 11, 2020 did not identify Elliott or Mr. Singer as persons with a pecuniary interest in the outcome of the case. (RJN, Ex. C (Dkt. 97).)  Eko ignored Defendants' requests for information about the Elliott relationship and delayed for eight months, until January 11, 2021, to amend its Notice of Interested Parties to identify Elliott as an interested person. (RJN, Ex. B (Dkt. 419).)

Elliott also has proclaimed publicly its knowledge of the merits of Eko's claims.  In May, Elliott stated that its "agreement with Eko reflects its belief in

Eko's legal case and in the company's technology." (Jacobs Decl. Ex. 1.) Elliott and Mr. Singer's stated confidence in Eko's claims continued in October, with statements attributed to Elliott that Quibi's "Turnstyle technology that allowed the videos to work seamlessly well in either portrait or landscape . . . already belonged to [Eko], someone in which Elliott holds a stake and someone whose legal bills Elliott is paying." (Jacobs Decl., Ex. 2.)

Where doing so benefitted them, Eko and Elliott have touted their connections and aggressive litigation tactics. As reported by the *Wall Street Journal*, Elliott's "fairly unusual" involvement in Eko's litigation was related to "Mr. Singer's ties to the technology scene in Israel, where Eko was founded, and to some of the interactive-video company's investors." (*Id.*, Ex. 1.) Elliott's involvement in the lawsuit has been reported regularly at other points in the case, often coincident with hearings or significant case events. (*See, e.g.*, *id.* Exs. 1, 3.)

For example, on December 2, 2020, a reporter for *Politico* contacted Quibi's CEO Meg Whitman during her deposition in this case for comments on an article stating that Eko's lawsuit was "being financed by Elliott Management, whose founder and president, PAUL SINGER, is one of the most influential powerbrokers in the Republican Party." (Jacobs Decl. Ex. 3.) The article asserted that negative media coverage of the lawsuit could "imperil" a potential political appointment for Ms. Whitman. (*Id.*) The article specifically referenced Ms. Whitman's deposition taken that day, even though the date of the deposition was not publicly known and could only have been learned from Eko or Elliott. (*Id.*)

Although media coverage has suggested that Elliott brings gravitas and a rigorous analysis to its litigation investments, Elliott's motivation for involvement in the lawsuit appears personal: Mr. Singer's romantic partner, Kassel, is the head of Elliott's HR department.[2] Ms. Kassel's son, Stephen Backer, holds a senior

---

[2] *E.g.*, "Billionaire LGBT Activist Paul Singer Partners with Christians to Reach Millennials", https://www.lc.org/PDFs/Attachments2PRsLAs/2016/LGBT-

1   position at Eko.[3]  Discovery will reveal whether Elliott's stated confidence in Eko's

2   claims is based on evidence or based on fabrication and a personal favor.

3   **B.    Quibi's Efforts to Obtain the Discovery at Issue Here**

4   Quibi made significant efforts to obtain discovery from Eko and Elliott

5   without court intervention.  Quibi sought discovery from Eko related to Elliott's

6   involvement with its first set of document requests on August 7, 2020.  Eko refused

7   to search for or produce any responsive documents.[4]  Quibi then served its

8   subpoena on Elliott on December 7, 2020.  At Elliott's counsel's request, Quibi

9   withdrew the December 7 subpoena served at Elliott's Delaware corporate address

10  and re-served Elliott, Mr. Singer, and Ms. Kassel in New York.

11  Quibi's subpoenas are properly tailored to the claims and defenses in the

12  case.  They seek documents and testimony for three general categories:

13  •      communications regarding Quibi or the litigation (Request Nos. 1-3, 7,

14         Topics 2 and 3);

15  •      analyses of Eko, its patents, or the litigation (Request Nos. 4, 6); and

16  •      the extent of Elliott's involvement in the litigation (Request Nos. 2, 3,

17         5, 8; Topic 1).

18  Quibi granted extensions of time and held numerous meet and confers with

19  Elliott in an effort to obtain compliance with the subpoenas.  On January 15, 2021,

20  Quibi proposed specific revisions to the subpoenas in redline format in an effort to

21  reach agreement on their scope.  (Elliott Mot., Goo Decl., Ex. B at 103-104; Jacobs

---

23  Funder-Paul-Singer-Steve-Green-Museum-of-the-Bible-Passages-Israel-Reach-
    Christian-Students.pdf ("Paul Singer and his partner, Terry Kassel, are directors for
24  the Foundation, where she serves as counsel.") (last visited Feb. 16, 2021).

25  [3] LinkedIn profile of Stephen Backer, https://www.linkedin.com/public-
    profile/in/stephen-backer-356b3b3?challengeId=AQFUojvLbzqp0AAAA
26  Xes3i4kfwQfF-xSmv-3S8SrwRdAoDh5_HbRA73NTKiUSx57YvXUjaE4z_
    VoncoyB49hyF8rntvFLUrD5w (last visited Feb. 16, 2021).

27  [4] Quibi has pending before this Court a motion to compel production of
    documents from Eko, which includes communications with Elliott.  (Dkt. 436.)

Decl., Ex. 4.)  After six weeks of negotiation, Elliott refused to provide any discovery, instead filing its motion.

## III.   APPLICABLE LEGAL STANDARDS

"[S]ubpoenas under Rule 45 are subject to the same scope of the discovery defined in Rule 26(b)." *Bazzo v. Asuncion*, 2017 WL 10560631, at *2 (C.D. Cal. Aug. 28, 2017); *see also Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 4365114, at *1 (N.D. Cal. Sept. 3, 2014).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005), *superseded by statute on other grounds*.

"Privilege determinations in patent cases are governed by the law of the regional circuit, here the Ninth Circuit." *Regents of the Univ. of Cal. v. Affymetrix, Inc.*, 2018 WL 4896066, at *2 (S.D. Cal. Oct. 9, 2018).  The party asserting the attorney-client privilege has the burden of establishing the privilege applies.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).  The party must prove all elements in the following eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Affymetrix*, 2018 WL 4896066, at *2 (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)).

A person that withholds information on a claim of privilege must provide sufficient information to enable the requesting party to evaluate the claim.  Fed. R. Civ. P. 26(b)(5).  "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege. . . .  The reason behind this rule is that, [i]f

1    clients themselves divulge such information to third parties, chances are that they

2    would also have divulged it to their attorneys, even without the protection of the

3    privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012)

4    (quotation omitted).

5    **IV.   ARGUMENT**

6         **A.   Elliott's Communications with Eko Concerning the Merits of
           Eko's Claims Are Relevant and Likely to Reveal the**

7         **Reasonableness of Eko's Continued Prosecution**

8         Contrary to Elliott's argument, its communications with Eko regarding Quibi

9    or the litigation are relevant to the case's merits and discoverable.

10        As explained in prior briefing, Eko has failed to consistently articulate its

11   claimed "ORTS" trade secret:  its formulation differs substantially across its

12   complaints, *ex parte* applications, and interrogatory responses.  Nor has Eko

13   pointed to documentary evidence showing that the trade secret was disclosed to

14   Quibi's accused employees (Joseph Burfitt and C.J. Smith) when they worked at

15   Snap.  Any potential investor in the litigation would know from a review of the

16   public court filings that these hurdles exist for Eko.  (*See, e.g.*, Dkt. 42, 254, 418.)

17   Eko's communications with Elliott about these merits issues and others are likely to

18   provide a frank account of whether the trade secret, patent, and contract-based

19   claims are supported by evidence.  Our search for the truth warrants this discovery.

20        Information exchanged during negotiation of a litigation-financing agreement

21   is also relevant where it addresses "central issues like validity and infringement,

22   valuation, damages, royalty rates, [and] pre-suit investigative diligence."

23   *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del.

24   Feb. 9, 2018) (quotation omitted).  The documents and communications between

25   Eko and Elliott about Eko's claims are relevant.  At minimum, the information is

26   relevant to the patents' validity and to infringement.  "[C]ommon sense confirms

27   the[ir] relevance" because Eko "would not have been providing irrelevant

28   information about the patents to its prospective litigation financier . . . ."

1    *Acceleration Bay*, 2018 WL 798731, at *3 (quotation omitted).

2           Additional authority confirms that third-party discovery going to the merits

3    of a litigant's claims is appropriate—whether or not the third party is an investor in

4    plaintiff.  In *AFMS LLC v. United Parcel Serv. Co.*, the court found that a third

5    party's "comments to the trade press showing he has a knowledge of the . . .

6    conduct at issue in the litigation" and "communicat[ions] with other third-party

7    consultants about the alleged conduct and its impact" were relevant and

8    discoverable.  2012 WL 3112000, at *2-3 (S.D. Cal. July 30, 2012).  In *Fulton v.*

9    *Foley*, the court found that documents provided to a litigation funder "would be

10   relevant information that could expand on the allegations of the Complaint, identify

11   witnesses, and potentially be used for impeachment."  2019 WL 6609298, at *4

12   (N.D. Ill Dec. 5, 2019).  In *Oak Industries v. Zenith Industries*, the court found that

13   statements by the defendant's employees to third party buyers of its business

14   regarding the patents at issue were discoverable; the disclosures waived any

15   attorney-client privilege.  1988 WL 79614, at *3-4 (N.D. Ill. July 27, 1988).

16          None of the cases Elliott cites in arguing "irrelevant" denied discovery

17   addressing patent infringement and validity.  (Elliott Mot. at 9-11.)  Rather, the

18   patent cases that Elliott relies on—*Optimize, EON,* and *MLC*—are consistent with

19   Quibi's position.  *Optimize* and *EON* permitted discovery from third parties

20   concerning information relevant to infringement, denying discovery only as to

21   information about non-accused technologies and material that predated the alleged

22   first infringement.  *Optimize Tech. Sols., LLC v. Staples, Inc.*, 2014 WL 1477651, at

23   *1-3 (N.D. Cal. Apr. 14, 2014) (ordering production of source code relevant to

24   infringement as well as sale and site metrics relevant to damages); *EON Corp. IP*

25   *Holdings, LLC v. T-Mobile USA, Inc.*, 2012 WL 1980361, at *2-3 (N.D. Cal. June

26   1, 2012) (ordering production of documents related to accused product, instructions

27   related to indirect infringement, and contracts related to infringement and

28   damages).  In *MLC*, plaintiff certified that "none of the non-party percipient

8

witnesses are funding this litigation" and the only stated relevance for litigation funding materials was with respect to "potential bias or conflicts of interest" the defendant hoped to raise at trial. *MLC Intellectual Property, LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019).

### B. Elliott's Information Concerning the Value of Eko's Claims And the Technology At Issue Are Relevant to Damages

Discovery from Elliott is also likely to provide relevant information about the value of Eko's claims and the royalty rate that could apply for any damages award.

Quibi has a significant need for this information, particularly since Eko has advanced novel and hotly contested damages theories. *See*, *e.g.*, *In re Subpoena to PayPal Holdings, Inc.*, 2020 WL 3073221, at *4 (N.D. Cal. June 10, 2020) (subpoena seeking information related to damages in the underlying action is proper). Eko seeks $101.9 million in damages on a "reasonable royalty" theory—even though Quibi had disappointing revenues and no profit over its service's lifetime. As an investor in the outcome of this litigation, Elliott likely has obtained information about the valuation of the patent-in-suits, expected royalty rates for the technology at issue, and Eko's (or Elliott's own) assessment of Eko's damages theories—all of which are relevant.

In *Intel Corp. v. Prot. Capital LLC*, for example, the court approved discovery about a third party's decision to invest because "it relates to the valuation of the patents," and the "patent valuations relate to the damages [plaintiff] seeks in the underlying patent case." 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) (granting motion to compel third party investor's compliance with subpoena seeking documents regarding investor's decision to invest in the patents at issue, its analysis of the investment, and its ongoing role in the pending litigation).

In *Impact Engine v. Google*, the court concluded that documents related to litigation funding were relevant to "(1) establish the value of the patents at issue; (2) obtain statements made by Impact Engine regarding the patents at issue; and

(3) refute potential trial themes." *Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at *4-5 (S.D. Cal. Aug. 12, 2020).  Other decisions agree that such damages-related information is discoverable.  *See, e.g.*, *Optimize Tech. Sols.*, 2014 WL 1477651, at *2; *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) ("Defendants seek these documents to learn about valuations placed on the Odyssey patents prior to the present litigation.  Because Odyssey seeks damages from the alleged infringement of its patents . . . valuations of Odyssey's patents are directly relevant to these claims").

That Quibi has requested discovery from Eko on damages "does not render irrelevant other information that could shed additional light on [the patents'] value," especially since Eko's damages contentions failed to demonstrate that its royalty estimate is tied to any calculable benefit stemming from the allegedly misappropriated technology or that its unjust enrichment theory is supportable. *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020).

Elliott's information concerning the value of Eko's patents and trade secret may also be used to impeach Eko's damages expert.  *See id.* ("Litigation funding agreements in a case such as this likely contain financial information related to the value of the litigation, and therefore to the value of the allegedly infringed patents, that will not be included in, or may contradict, the expert's report.").

Finally, discovery from Elliott is needed to respond to the theme of the case that Eko has articulated:  That Eko is a "small player" taking on Hollywood elite whom Eko accuses of "stealing" its technology.  Neither part of that statement is true.  But merits aside, Eko is likely better-funded and entrenched than Quibi.  The Elliott hedge fund and Mr. Singer's involvement in Eko's business and the outcome of the litigation are evidence of it.  *Cont'l Circuits*, 435 F. Supp. 3d at 1019 ("the Court has little difficulty concluding that the requested documents and information are relevant.  They concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial.").

For these additional reasons, the requested discovery is relevant.

## C.   Elliott's Involvement in This Litigation Is Relevant to Quibi's Claim for Fees and Eko's Standing on Its Patent Claims

As noted above, Quibi intends to seek its fees incurred in defending Eko's meritless claims and vexatious litigation tactics.  Eko has sought *ex parte* relief five times, including two unsuccessful requests for preliminary injunctions.  (Dkt. 25, 33, 74, 240, 306.)  Eko amended its complaint five times, including to take the extraordinary steps of suing Quibi's founder and employees, and to re-plead all claims after the Court determined Eko was unlikely to succeed on the merits.  Quibi is entitled to determine if Elliott is the real party driving these litigation tactics, to pursue its fee claims against all proper parties.  *See, e.g.*, *Applied Materials, Inc. v. Multimetrixs*, LLC, 2009 WL 1457979, at *5 (N.D. Cal. May 26, 2009) (granting accused infringer leave to amend its complaint to name principals of the patentee, to satisfy due process concerns before determining if principals were liable for § 285 fees); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 83904 (E.D. Tex. 2017) (analyzing personal liability of non-party founders of shell company after joining for purposes of § 285 motion); *Xcentric Ventures, LLC v. Arden*, 2010 WL 424444, at *3 (N.D. Cal. Jan. 27, 2010) (denying motion to quash subpoenas seeking information as to "the true identity of [defendant]'s owner(s) and enforcing the judgment of monetary damages").

Discovery is particularly warranted "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019), *adopted and aff'd* 2020 WL 1042515 (D. Nev. Mar. 3, 2020), quoting *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019).  Press reports state that Elliott is "looming large over settlement negotiations" and that "it has already been reported to have taken an equity stake in

Eko." (Jacobs Decl. Ex. 5.)[5]  As *Axios* reported in May 2020, "a source says that Elliott will receive a 'significant' equity stake in Eko." (Jacobs Decl. Ex. 6.)

Eko and Elliott have not denied these reports, nor have they represented that Elliott is uninvolved in driving the case strategy.  "[I]t would be 'manifestly unfair' if third party that "may control the underlying lawsuit" in the future can "shield[] itself from discovery." *Bristol-Myers Squibb Co. v. Kite Pharma Inc.*, 2019 WL 8589409, at *4 (C.D. Cal. May 29, 2019) (denying motion to quash subpoena seeking deposition testimony on damages-related issues).

Eko's refusal over many months to file a corrected Certificate of Interested Parties identifying Elliott's involvement in the case also warrants discovery. (Jacobs Decl. Exs. 7–8.)  Quibi asked Eko several times to explain why it had not identified Elliott as an interested party; Eko declined to address these requests for months.  When it finally amended its corporate disclosure, Eko wrote that it "does not believe [Elliott's] involvement necessitates identification of Elliott." (RJN, Ex. B (Dkt. 419).)  Quibi should "have the opportunity to test [Eko's] averments" in its court filings to establish their truth.  *See, e.g.*, *Cobra Int'l Inc. v. BCNY Int'l, Inc.*, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013).

Discovery related to Elliott may also be relevant to Eko's standing to sue.  A litigant without "exclusionary rights" to a patent lacks standing to sue, and a litigant without "all substantial rights" to a patent lacks standing to sue without the all-substantial-rights holder.  *Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 7122617, at *4 (N.D. Cal. Dec. 4, 2020) (suit dismissed for lack of Article III standing after discovery that plaintiff lacked exclusionary rights to asserted patents pursuant to agreement with third-party funder); *see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1227 (Fed. Cir. 2019); *Cobra Int'l*, 2013 WL

---

[5] *Id.* ("The presence of Elliott's funding makes the case an interesting study in how IP owners litigate when cost is no option . . . To that point, Eko has embraced an escalation-at-every-turn approach, clearly designed to force Quibi to the negotiating table hat-in-hand.").

11311345 at *3; *V5 Techs.*, 334 F.R.D. at 311, n.5. The nature of Elliott's interest in the litigation and Eko's patents-in-suit is relevant to the real-party-in-interest analysis and Eko's standing.

### D. Elliott's Vague Assertions of Privilege Are Improper and Do Not Support Its Refusal to Provide Discovery

Eko and Elliott cannot claim privilege over the factual information and analyses that Quibi seeks. Elliott's vague assertions of privilege, without a privilege log or other explanation of their specific bases, are insufficient.

#### 1. Eko and Elliott's discussions about the case and Eko's technology are not protected as attorney work product.

Documents prepared for or by Elliott for the purpose of an investment in Eko are not protected by the work product doctrine because they were not "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3).

The party asserting attorney work-product protection has the burden of showing that the documents were prepared by or at the direction of counsel and in anticipation of litigation. *See, e.g.*, *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011). Communications between business persons are not attorney work product. *See, e.g.*, *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2015 WL 196713, at *3 (W.D. Wash. Jan. 14, 2015) ("While Mr. Preston and Mr. Marchand may have a joint business interest in patent litigation, their own personal opinions are not protected by the work-product privilege.").

Elliott has not made any proper showing of work product protection. Its brief merely speculates that "the majority of any responsive documents would *likely* include counsel's mental impression." (Mot. at 13 (emphasis added).) No privilege log has been provided, and no other factual showing of work product has been made here. *See, e.g.*, *Le v. Zuffa, LLC*, 321 F.R.D. 636, 647 (D. Nev. 2017) ("Nothing in the record establishes that Zuffa even attempted to meet its burden until after this motion was filed. Zuffa did not list the documents on a privilege log

1    before this motion was filed.").

2         In any event, documents created to obtain litigation funding are "prepared

3    with a 'primary' purpose of obtaining a loan, as opposed to aiding in possible future

4    litigation.  For that reason alone, the communications are not work product."

5    *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *2 (D. Del.

6    Feb. 9, 2018).  Even if documents were prepared by Eko's counsel for Elliott, "a

7    nonparty to the litigation, work product protection does not apply, even if the

8    nonparty is a party to closely related to the litigation." *Id*., quoting 6 James Wm.

9    Moore *et al.*, Moore's Federal Practice § 26.70 (3d ed. 2015).

10        Elliott's reliance on *Hoist Fitness* is misplaced.  (Elliott Mot. at 13.)  *Hoist*

11   *Fitness* addressed an opinion letter by counsel assessing the risk of patent

12   infringement, which was prepared nine months before the defendant applied for a

13   patent litigation insurance policy.  *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l,*

14   *Inc.*, 2018 WL 8193374, at *7 (C.D. Cal. May 14, 2018).  The court found only that

15   work product protection for the opinion letter was not waived by sharing it with its

16   insurer.  The court also considered a "risk summary" report, prepared in connection

17   with the defendant's application for insurance, and concluded it was not protected

18   as work product.  *Id*. at *4, 8.  Here, documents prepared to secure or evaluate an

19   investment in Eko or to secure litigation funding are akin to the risk summary

20   report in *Hoist Fitness* and not protected.

21        Finally, the attorney work-product doctrine is at most a qualified protection.

22   *Le*, 321 F.R.D. at 647.  If *arguendo* any materials identified by Elliott qualified as

23   work product—and Elliott has not identified any—Quibi has a substantial need for

24   them for the reasons described above.  Fed. R. Evid. 26(b)(3).

25            **2.    The communications between Elliott and Eko are not**
              **confidential attorney-client communications.**
26

27        Elliott also has not met its burden to establish that the attorney-client

28   communications privilege applies to its discussions with Eko.  *Ruehle*, 583 F.3d at

14

607 (reciting test for sufficiency of claims of privilege); *Affymetrix*, 2018 WL 4896066, at *2 (same).  Again, Elliot's brief alleges generally that "most" of the information sought is privileged, without explaining which documents this includes or making a proper claim of privilege.  (Elliott Mot. at 13.)  No privilege log or specific identification of privileged material has been provided.  Accordingly, no further analysis of Elliott's vague assertion of privilege is required.

Instead of making a case for its privilege claim, Elliott's brief argues that a "common interest" exists with Eko.  (Elliott Mot. at 13-14.)[6]  The common interest doctrine "is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance."  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  But Elliott has made no showing that the attorney-client privilege has attached to its communications with Eko or documents in the first instance.

Again, the attorney-client privilege does not apply to discussions between Eko and Elliott about this litigation because Elliott is not currently a party to the litigation.  "[C]ommunications from a third party to the client" are not subject to the attorney-client privilege.  *Kandypens Inc. v. Puff Corp.*, 2020 WL 7978226, at *5 (C.D. Cal. Dec. 7, 2020).

Elliott's relationship with Eko is a business relationship, not a legal one.  Claims of attorney-client privilege over such communications are "an improper assertion of the privilege even if the communication includes advice from counsel."  *Eagle Harbor Holdings,* 2015 WL 196713 at *2.

---

[6] The common interest doctrine does not apply for the reasons discussed in Section IV(A)(3) below.

### 3. The common interest doctrine does not apply to Elliott's information or any Eko-Elliott communications.

Even if *arguendo* the Court were to conclude that Elliott has made a proper claim of attorney-client privilege—which is a prerequisite to asserting a common interest—the common interest doctrine does not apply.

The communications between Eko and Elliott are not covered by the common interest doctrine because the companies share a commercial interest, not a legal one. *See, e.g.*, *Nidec Corp.*, 249 F.R.D. at 579 (relationship must be founded on "a common legal, as opposed to commercial, interest" (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 447 (S.D.N.Y 1995))); *Eagle Harbor*, 2015 WL 196713, at *3. Elliott has asserted in the media that it has a financial investment in Eko. (*See, e.g.*, Jacobs Decl. Exs. 1–3, 4–6.) Tellingly, Elliott does not explain the nature of its interest in the litigation in its motion to quash. (Mot. at 14.)

*Cohen v. Cohen* is instructive here:

> Because Ms. Napp is neither necessary to facilitate Plaintiff's communications with counsel nor in possession of a legal claim against Defendants, her communications with Plaintiff are not privileged . . . Rather, her primary purpose appears initially to be making a decision as to whether her company will fund Plaintiff's legal team and thereafter reviewing and commenting on legal strategy presumably to maximize the chances of a return on her investment. . . . Viewed as a whole, there is nothing about Ms. Napp's advice or commentary that is critical to Plaintiff's ability to seek and receive legal advice from her counsel . . . Ms. Napp is not a party to this litigation, and there has been no suggestion that she has any legal claim against Defendants whatsoever. She thus cannot possibly share any legal interest with Plaintiff sufficient to invoke the common interest doctrine. . . . Although the two may have a common financial interest in the outcome of this litigation, that relationship does not fall into the narrow category primarily reserved for co-litigants pursuing a shared legal strategy.

2015 WL 745712, at *34 (S.D.N.Y. Jan. 30, 2015) (requiring production of communications between plaintiff and litigation funder regarding legal strategy, discovery, and funding); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 335

F.R.D. 510, 516 (N.D. Ill. 2020) ("Courts in this District consistently have held that communications with lenders, financiers, or other parties whose sole interest in a case is financial are not entitled to common interest privilege protection.").  Where, as here, there is "little to indicate that Defendants and the [third party] might ever engage in joint litigation" there is no legal interest to justify extending the common interest privilege. *Nidec*, 249 F.R.D. at 579 (addressing prospective purchaser).

In addition, the common interest doctrine can be asserted only by parties who have retained separate counsel. *Affymetrix*, 2018 WL 4896066, at *3 (quoting *Pac. Pictures*, 679 F.3d at 1129) (common interest doctrine "designed to allow attorneys for different clients . . . to communicate with each other").  Elliott has made no showing that, before its current counsel became involved to pursue this motion to quash, Eko and Elliott communicated through separate counsel only.

Finally, if *arguendo* the Court were to find the common interest doctrine applies, Eko and Elliott have waived any such protection by placing their relationship at issue here. *See, e.g.*, *In re Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998).

### E. Quibi Seeks Information in Elliott's Possession—Including Information That May Be Solely in Elliott's Possession

Elliott's argument that it should be shielded from discovery because Eko is required to provide discovery, if accepted, would render the overwhelming majority of third-party discovery improper.  Quibi's subpoenas seek information that may be uniquely in Elliott's possession, custody, and control.  For example, it is likely that non-duplicative documents and information are in Elliott's possession:

- Elliott's communications with the media regarding Quibi, Eko, or the litigation (Request Nos. 2 and 3);
- communications discussing the merits and value of Eko's claims against Quibi (Request Nos. 4 and 6);
- Elliott's documents reflecting its role in the underlying litigation

17

(Request No. 5);

- communications with Kassel's son, Stephen Backer, other than through Backer's Eko-associated email address (Request No. 7); and

- communications with third parties reflecting Elliott's efforts to achieve search optimization to promote stories about the litigation ahead of search results for Quibi's streaming service (Request No. 8).

Rule 45 provides a vehicle for Defendants to seek this discovery from Elliott. *Copetillo v. Fontana*, 2020 WL 7861977, at \*4 (C.D. Cal. Nov. 24, 2020) ("A non-party is subject to, and required to comply with, a valid, properly served Rule 45 subpoena."). Contrary to Elliott's argument, Quibi properly served the subpoenas per party agreement. The as-served subpoenas match the subpoenas attached to the amended notice that Quibi served on Eko on December 8, 2020. (Jacobs Decl., Exs. 9–10.) None of Elliott's arguments justify invalidating Quibi's subpoenas.

## V. CONCLUSION

For all the reasons discussed above, the motion to quash the subpoenas should be denied. Elliott, Singer, and Kassel should be ordered to comply with the subpoenas within 10 days of an order on this motion.

Dated:   February 18, 2021          MORRISON & FOERSTER LLP


                                    By:  */s/ Michael A. Jacobs*
                                    _____
                                        Michael A. Jacobs

                                        Attorneys for Defendant
                                        QUIBI HOLDINGS, LLC

sf-4416454

18